## O'HAGAN *v.* EXECUTOR OF O'HAGAN.

A proceeding by a wife against the husband, under section 1485 of the Code, asking for a change or modification of a former decree, making an allowance for the support of the wife, abates by the death of the husband. (STOCKTON, J., *dissenting*.)

Where a wife obtained a decree of divorce against the husband, in which the husband was required to pay her a certain sum, "in full as alimony;" and where the wife subsequently filed her bill, asking that the former decree, so

O'Hagan v. Executor of O'Hagan.

far as it related to alimony, might be changed, so as to give her a further monthly allowance for the support of herself and children, during the pendency of which bill, the husband died; and where the executor of the husband, was made a party respondent, and insisted that the proceeding abated on the death of the husband, and the court dismissed the bill of the complainant; *Held*, That the bill was properly dismissed.

### *Appeal from the Dubuque District Court.*

PRIOR to the October term, 1851, of the District Court of Dubuque county, the complainant filed her petition therein, asking a divorce from the bonds of matrimony existing between her and her husband, Charles O'Hagan. At that term a divorce was decreed as prayed, and the husband required to pay a certain sum, " *in full, as alimony*," to the said petitioner. At the October term, 1854, she filed the bill in this cause, setting forth various reasons why the former decree, so far as it related to alimony, should be changed, and praying that it should be so modified as to give her such further monthly allowance, for the support of herself and children, as to the court might seem equitable and just, in view of all the circumstances. While this bill was pending, the said Charles departed this life, and his executor, Geo. L. Nightengale, being made a party respondent, insisted that the said proceeding abated on the death of the husband, and that complainant ought not to be allowed to further prosecute the same. The court below being of this opinion, dismissed the bill, and complainant appeals.

*Clark & Bissell*, for the appellant.

The main point in this case, is whether the cause abated upon the death of the defendant. We say that it did not. The defendant's counsel refer to certain sections of Bishop on Marriage and Divorce, to sustain their position of abatement, and especially to sections 559, 591, 592. By an examination of the English authorities, it will appear that alimony is an allowance to the wife, while living separate and apart from her husband—and always allowed upon a decree in favor of the wife *a mensa et thoro*. And the object

is expressly stated to be the reconciliation and re-union of the parties.   No doubt the policy of law is the same here upon a like divorce.

But no such limitation prevails upon a dissolution of the bonds of matrimony.  In such case no re-union is expected; the reason of the law, therefore, is not the same.   The Code gives to the wife, a support upon a divorce from the bonds of matrimony—and this is not called alimony, save in the caption of the chapter.   But it is of no importance by what name the thing is called.   It derives its character from the provision of the Code respecting it—and in this view it is of different and more extensive signification, than those cases in the English law, which govern alimony a mensa. Upon a divorce a vinculo, there is no expectation of parties coming together again—there is, therefore, no policy of law to induce it.   Why then, should the support of the wife and children be limited to the life of the husband—or why should his obligation cease at his death?   Other obligations do not cease at his death, but his estate is liable for them.   Is the obligation to support those sustaining the tender and sacred relation of wife and children less than to pay an indebtedness to a stranger?   See Bishop on Marriage and Divorce, §§ 600, 601, where it is expressly stated to have been laid down by Nelson, C. J., that alimony under the statute may be made by the decree to continue after the death of the husband, during the entire life of the wife.

Reference is made to the case of Burr v. Burr, 10 Paige, 20.  We refer the court to the remarks of that eminent jurist in that case.

Among other things he quotes the statute of New York as follows:  "The statute authorizes the court to make such order and decree for the suitable support and maintenance of the wife, out of the property of the husband as may be just and proper."   Is not the language of the Code equally clear, comprehensive and strong?

"The court may make such order in relation to the property of the parties and the maintenance of the wife, as shall be right and proper."  Section 1485.  The language of the

two acts is remarkable for similarity, in so much that the one is almost a transcript of the other. Which then is the better authority, that appertaining to the ecclesiastical courts of England, or a well reasoned case upon a statute like our own?

But if we have shown that alimony, or which is the same thing, a support, may be decreed for the life of the wife, and beyond the death of the husband, does it not follow as a consequence that the action survives? In case of a decree before the death of the husband, for alimony, during the life of the wife, and the wife should survive, revivor would follow against the representatives. And why, we ask, might not revivor as well be had in case of the death of the husband before, as after the decree? and especially when the suit is commenced before his death, and the decree is subject by law to be changed? See 9 N. H. Rep. 309; 9 Ohio Rep. 37. Both of which cases go to show that alimony derives its meaning from the statute, and signifies support, without limitation as to time. See also Bishop on M. & D. § 560; 3 Dana's R. 29, 30. This last case shows what alimony is in its ordinary acceptation. It is maintenance during coverture, or until reconciliation. In that case the court say, there being no divorce a vinculo, an allowance cannot be decreed for the term of the wife's life.

Again, we say this action survives by section 1698 of the Code. This language may be regarded as peculiar, and not easy of construction; but it has a meaning, and the court must say what that meaning is. From the nature of this case, the cause can survive; out of the nature of the case, grow the necessities of the woman; her wants continue as well after the death of the husband as before; and we would ask, does death relieve him of his solemn obligations? That event does not change the nature of the case. In case of torts, death may in some measure at least work a change on the nature of the case—damages are given in part as a penalty—but no human penalty can reach a dead man. But we think the meaning of the section referred to, would be more accurately ascertained by considering as to which

party the action survives.  Were the complainant to die, the *nature* of the action would not survive, because support would be no longer needed.  If the action survives by that section of the Code to which we have referred, it alone is sufficient for our purpose.

In the court below, much reliance was placed by counsel, on the case of *Gaines* v. *Gaines*, 9 B. Monroe.  But we submit that that case is similar to this in no one of its features. In that case there was no divorce on the part of the wife, of any kind.  She left him, it may be for good cause, and made her application for support; pending this application, the husband obtains a *stolen* legislative divorce, and then pleads the same in bar of the wife's application for alimony. The engrossing question in that case, was as to the effect of the legislative divorce.  It is true the court do consider the question of alimony.  But the views of the court are of course limited to the true character of the case.  Before the cause came on to be heard, the husband died, whereupon the wife filed her supplemental bill, in which she asked, in addition to alimony, a distributive share of the estate, and also dower.  The court say, that the claim to alimony, *as such*, ceases at the death of the husband, when the wife becomes entitled to dower.  And this is no doubt true, in case of a divorce *a mensa*, for she is still the wife; but in case of a divorce *a vinculo*, she no longer sustains that relation.  Is she then entitled to dower?  If she is not, it would seem clear that the court ought to give her a most liberal support.  Can it do this with certainty of justice, unless the husband's estate can be reached after his death?  In the case before the court, $400 might not have been unreasonable at the time it was allowed, whereas, afterwards, it might be a mere pittance.

We think the case of *Jolly* v. *Jolly*, 1 Iowa, 9, is materially in aid of the views here presented.  If it is competent for the court to decree the wife a portion of the husband's estate *absolutely*, relief would not be cut short by the death of the husband.  Precarious indeed, would be the condition of the divorced wife, were such the case.  The entire

reasoning of this court, in the case referred to, supports such construction of the law as comports with the necessities of the injured party, and the subsisting obligation of the party inflicting it.

*Nightengale & Wilson*, and *Doud*, for the appellee.

The nature of the case is stated in the argument of the appellant, in which it is conceded that the only point in the case now before the court, is, does the suit for alimony survive the death of defendant, Chas. O'Hagan, and can it be carried on against his administrators?

Alimony is the allowance, (regular—yearly or monthly, or weekly), which a husband pays by order of court to his wife, who is living separate from him, during the period of their separation, for her maintenance. See Bishop on Marriage and Divorce, § 549, and note 1, with cases cited; Ibid. § 560; *Wallingsford* v. *Wallingsford*, 6 Harris & John. 485.

Our statute provides that when a divorce is decreed, (or upon the granting of any divorce), the court may make such order in relation to the children and property of the parties, and the maintenance of the wife, as shall be right and proper—evidently contemplating that the order for alimony, can only be made at the time when the decree for divorce is made, and of course when both parties are living. See Code of Iowa, § 1485; Bishop on Marriage and Divorce, § 549.

Alimony can exist only so long as the husband's duty to maintain the wife exists, which duty ceases at his death. Bishop M. & D. §§ 560, 591 and 592, and cases cited, particularly § 592, wherein reason is given for occasional decree, to continue in some cases longer—in aggravated cases. *Barr* v. *Barr*, 7 Hill, 209. Consequently appellant's suit for alimony, abated at the death of defendant, and cannot, from the nature of the case survive, against defendant's administrator. See Code of Iowa, § 1698; Bishop on M. & D. § 559, and cases cited; *Gaines* v. *Gaines*, 9 B. Monroe, 299.

The case of *Burr* v. *Burr*, 10 Paige, 20, and Bishop on

M. & D. § 600, cited by appellant, are not in point.   In the cases referred to there, the alimony was decreed at the time the divorce was decreed, and between the parties then living ; which decree for alimony was to continue till after the death of the husband. ' In the case before us, appellant seeks to obtain a decree for alimony, long after the time of granting the divorce, and after the death of defendant. Besides, if they were in point, they do not aid in ascertaining the meaning of the New York statute, or our statute, because the remarks by the judge in the case of *Burr* v. *Burr*, are wholly extra-judicial, so far as they relate to the time alimony might be decreed to .continue ; the only question decided in that case being, whether a gross .sum or an annuity, could be decreed, and whether the amount decreed by the vice-chancellor below, was too great.

WRIGHT, C. J.[1]—This bill was filed under section 1485 of the Code, which gives to the court decreeing a divorce, the power to make such order in relation to the children and property of the parties, and the maintenance of the wife, as shall be right and proper, and which also provides, that " subsequent changes may be made by the court in these respects, when circumstances render them expedient." Does a proceeding asking such change or modification, abate by the death of the husband ? is the only question presented for our determination.   We clearly think it does.   What is alimony, and what its original object and purpose ?  As stated in *Jolly* v. *Jolly*, 1 Iowa, 9, it is the nourishment—the maintenance— the allowance made for the support of the wife, which is given and fixed by the proper court, out of the husband's estate, when they are legally separated.   So in Bishop on M. & Div. § 549, it is said to be the allowance which .a husband pays by order of court to his wife, who is living separate from him, for her maintenance.   And in *Wallingsford* v. *Wallingsford*, 6 Har. & J. 485, it is stated to be, not a portion of his real estate to be assigned to her in fee sim-

[1] STOCKTON, J., dissenting.

ple, subject to her control, or to be sold at her pleasure, but a provision for her support, to continue during their joint lives, or so long as they live separate. As a separate, independent right, it has no common-law existence, but is always appurtenant or incident to some proceeding for some other purpose. So also, being a provision for her support during separation only, and looking to a possible reconciliation, and recohabitation of the parties, it is manifest that it originally was authorized only in cases of divorce *a mensa*, and not in those which dissolved the marriage, or the matrimonial bond. In this country, however, the statutes of the different states generally, authorize that where a divorce of either kind is granted, there may also be a decree for alimony, or some equitable and fair division of the property. In making such decree, our courts are not, in many of the states, confined to giving to the wife sums of money, payable at regular periods; nor to giving her money merely; but may give her absolutely a specific portion of his estate or property, whether real or personal. And in decreeing her sums of money, in the first instance, or in making the proper and equitable order in relation to their property, and her maintenance, the decree may provide for the payment thereof from year to year, for a specified period, or may provide even that it shall continue during her life. And thus, we see, that alimony as originally understood and decreed in the English courts, and the class of cases in which it was given, has been greatly changed and modified by the statutes of the different states, and the decisions of our courts. *Barr* v. *Barr*, 7 Hill, 209; *Richardson* v. *Richardson*, 8 Yerger, 67; *Fischli* v. *Fischli*, 1 Blackf. 360; *Reavis* v. *Reavis*, 1 Scam. 242; Bishop on M. & D. 591, 592.

But notwithstanding all these modifications, we do not understand that any court has yet held, that the wife, after the death of the husband, may ask an allowance of this character. Nor is there any case to be found in the books, as we believe, recognizing the right of the wife to prosecute her suit for alimony, commenced in the husband's lifetime, after his decease. Where the bill is for a divorce, and ali-

O'Hagan v. Executor of O'Hagan.

mony as appurtenant or incident thereto, the death of the husband, of necessity, abates so much of the bill as seeks the divorce, and as necessarily, as we think, that portion which seeks alimony—if for no other reason, because a bill for alimony alone, is unknown to the common law, and is certainly not allowed in this state. And as an original suit for divorce and alimony, would abate by the death of the husband, for the same reasons would a proceeding to modify or change a former decree in relation to the wife's support, abate. Are we asked why the wife may not apply to the courts for alimony, or for the modification of a former decree in respect to the same, after the husband's death; or may not prosecute a suit already pending against his administrator? we answer, because upon his death, *if his widow,* she is entitled to dower, to be set apart to her in the method provided by law—and any pending claim for alimony is necessarily, and legally merged and swallowed up in such dower right. If not his widow, nor entitled to dower, we do not know upon what ground she would be entitled to alimony. The allowance of alimony must be made from a living husband, to a living wife, and upon the death of either party, the courts possess no further power, in respect to such allowance.

But it is said that a decree may be made giving to the wife an annual or other allowance during her life, which may extend, and be enforced against his estate beyond the life of the husband; and if so, a court may also modify a former decree, either in favor of or against the husband, after his death. The answer to this is, that in such a case, the court has acted upon the whole question, during their joint lives, and has decreed to her a definite and fixed sum. This decree has the same force and validity as any other judgment, and may be collected in the same manner. It is a fixed, ascertained, and subsisting debt against him, and upon his death, against his estate. Not so, however, with a claim for alimony which never has been settled; or where the wife, after his death, seeks to increase the amount allowed in his lifetime. It is not a demand, definite in its

character, to which she has an absolute right. By the decree giving her an absolute sum during her life, she stands as any other creditor, and her right to payment does not depend upon the amount of his estate, whereas the ability of the husband, and their condition in life, are important to be considered in awarding alimony, or in changing a dower for the same. The case of *Gaines* v. *Gaines,* 9 B. Monroe, 295, expressly decides that the claim to alimony, as such, ceases at the death of the husband, and the petition of the wife therefor, was refused, though pending at his decease— the court saying, " we are of opinion that such claim, though asserted before his death, will cease by that event, and cannot be afterwards availably asserted, unless it has been before ascertained and fixed by decree." And to the same effect, see Bishop on M. & D. § 559. The case of *Jolly* v. *Jolly,* 1 Iowa, 9, referred to by appellant, decides only, that under the Code, in applications for a divorce and alimony, the court may give to the wife a certain portion of the husband's lands in fee simple.

But it is claimed, that this case comes within section 1698 of the Code, which provides that actions do not abate by the death of either party, if from the nature of the case, the cause of action can survive. Much that we have before said, is applicable to the argument attempted to be drawn from this section. It might admit of a doubt, whether a proceeding of this character is an *action* within the meaning of this provision. But however this may be, we think that whether the action or proceeding has been commenced or not, the remedy of the party is gone, or must abate, unless the cause of action is of such a nature that it can survive. What are such causes of action, we determine from the common law and our own statutes. But what court ever held, or what provision of our law contemplates, that after the death of the husband, the wife may, by suit, claim alimony from his estate? If such an action or proceeding should be commenced *after* his death, no person, perhaps, would claim that it could be maintained. So, if instead of by an original action claiming alimony, she should, after his

O'Hagan v. Executor of O'Hagan.

death, file her bill to modify a former decree, we apprehend that it would meet but with little, if any, favor. And why? We answer, because from the very nature of the relief sought—from the character of the relation out of which the claim originates—from the nature of the cause of action, as recognized by the uniform adjudications of this country and England—the judicial mind resists the proposition to decree the wife alimony, or change that before allowed her, after the husband's death, as being inconsistent and incompatible with *her* new position, and the rights of the heirs and others interested in the estate. And, in like manner, and from the same considerations, it would seem that the fact that she filed her bill asking such modification before his death, could not change the nature of the cause of action—nor make more complete her right to the relief prayed for.

Decree affirmed.

STOCKTON, J. dissenting.—I concur in the decision of the court which affirms the judgment of the District Court.

But I dissent from that part of the opinion of the chief justice, which rules that the application made by the wife, to obtain a modification or change in the order allowing her maintenance from the husband's property, abates by reason of the husband's death, pending the application. My concurrence in the judgment of affirmance, is based upon the fact, that I do not understand from the record, that the question was made to the District Court, that the proceedings abated by reason of the husband's death, nor does the record show that any such question was decided. It does appear, however, that evidence was introduced, tending to show that the applicant was not entitled to the relief sought; and to all appearance, the judgment of the district was rendered, upon the merits of the whole case, dismissing the application, after a full investigation, and after the examination of testimony on both sides. Such a judgment I would not disturb, unless it was manifest that there was an improper exercise of the discretion allowed, in granting or refusing, an additional amount for the maintenance of the

wife. That the wife may be entitled to receive an additional sum for maintenance from her husband, dependent upon the prices of living, or upon a change in the circumstances of the parties, is not denied. She has a right to a support from her husband, and from his estate, if he is dead. This right becomes fixed and vested upon the granting of the decree for divorce, if it is made upon her application as the injured party. The court may make such order for her maintenance as shall be right and proper, (Code, § 1845,) and may change the allowance, when circumstances render it expedient. Why the application should abate, and why her right to have such change made, should cease and determine with the death of the husband, I can see no good reason. I particularly, see no sufficient reason for the adjudication of the question in this cause, when it does not appear to have been decided by the court below.

For these reasons, thus briefly stated, I dissent from the decision of the court, so far as it holds that the application for an increase in the amount allowed the wife, for her maintenance, out of the husband's property, abates at the husband's death.